IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| JAMES CARL VANCE, *et al*., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )    No. 3:19-CV-283 |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |
| JACKIE SUE BARNES, *et al*., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )    No. 3:19-CV-296 |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

## <u>MEMORANDUM OPINION</u>

This civil action is before the Court for consideration of Defendant's motion to dismiss for lack of jurisdiction [Case No. 3:19-cv-283 ("*Vance*"), doc. 10; Case No. 3:19-cv-296 ("*Barnes*"), doc. 8].  Plaintiffs have responded [*Vance*, doc. 14; *Barnes*, doc. 12], and Defendant has replied [*Vance*, doc. 16; *Barnes*, doc. 14].  This matter is now ripe for the Court's determination.  For the reasons that follow, Defendant's motion to dismiss for lack of jurisdiction [*Vance*, doc. 10; *Barnes*, doc. 8] will be denied.

# I.    BACKGROUND

These cases stem from the Chimney Tops 2 fire that began in the Great Smoky Mountains National Park, and ravaged the City of Gatlinburg, in November 2016. Plaintiffs have now sued the United States under the Federal Tort Claims Act ("FTCA"), seeking redress for their losses, which include property losses and losses of life.  [Doc. 1].[1] Plaintiffs allege that the National Park Service ("NPS") was negligent in several respects relating to their response to the wildfire, which burned within the Park for several days before spreading to Gatlinburg.  Specifically, Plaintiffs allege that the NPS was negligent in failing to monitor the wildfire overnight, failing to comply with command structure requirements, failing to adhere to mandatory fire management policies and requirements, and failing to warn Park neighbors.  [*Id*. at 121-154].  Several Plaintiffs in *Vance* have also raised claims of wrongful death and loss of society and consortium relating to the deaths of family members.  [*Id*. at 155-56].

The government has filed a motion to dismiss for lack of subject matter jurisdiction, asserting that the claims all fall within the discretionary function exception to the government's waiver of sovereign immunity under the FTCA.  [Doc. 10].  Plaintiffs respond, contesting the applicability of the discretionary function exception as to each claim.  [Doc. 14].  The government replies, reiterating many of its original arguments. [Doc. 15].

---

[1]  Both of these cases contain the same substantive allegations with nearly identical language.  For ease, the Court will refer to the documents in *Vance*, 3:19-cv-283.  All citations to the record not otherwise specified refer to documents in *Vance*.

On July 22, 2019, the Court heard oral argument on identical motions filed in related cases *Reed v. United States* (3:18-cv-201), *Anculle v. United States* (3:18-cv-308), and *Adkins v. United States* (3:18-cv-310). At the time of those oral arguments, no motion to dismiss had been filed in either of the two instant cases. The Court denied the motions to dismiss in *Reed*, *Anculle*, and *Adkins*, concluding that Plaintiffs abandoned all of their claims of negligence at oral argument, except that relating to the failure to warn of the fire danger. [*Reed*, doc. 41; *Anculle*, doc. 35; *Adkins*, doc. 35]. The Court then concluded that the discretionary function exception did not bar Plaintiffs' claims based on the failure to warn, and denied the government's motion. [*Id.*]. Although both *Vance* and *Barnes* contain identical claims and arguments, relating to the motions to dismiss, as those raised in *Reed*, *Anculle*, and *Adkins*, the Court did not address the motions to dismiss in *Vance* and *Barnes* at the same time, because the Court could not conclude that the abandonment of claims at oral argument in *Reed*, *Anculle*, and *Adkins* applied equally to *Vance* and *Barnes*. However, the parties in *Vance* and *Barnes* have now filed a joint notice to the Court that the parties intended the representations made in the oral argument of *Reed*, *Anculle*, and *Adkins* to equally apply to *Vance* and *Barnes*. [*Vance*, doc. 17; *Barnes*, doc. 16]. In light of this concession, the Court concludes that the same analysis it applied to *Reed*, *Anculle*, and *Adkins*, as discussed below, also applies to *Vance* and *Barnes*.

## II.     STANDARD OF REVIEW

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). In other words, federal courts "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress

pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). As such, subject matter jurisdiction is a threshold issue that the Court must address and resolve prior to reaching the merits of the case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998); *see also* Fed. R. Civ. P. 12(h)(3) (providing that, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action"). Unlike a motion to dismiss for failure to state a claim under Rule 12(b)(6), "where subject matter jurisdiction is challenged under Rule 12(b)(1)[,] . . . the plaintiff has the burden of proving jurisdiction in order to survive the motion." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986)).

Rule 12(b)(1) motions fall into two categories: "facial attacks and factual attacks." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). "A facial attack is a challenge to the sufficiency of the pleading itself." *Id*. In considering whether jurisdiction has been established on the face of the pleading, "the court must take the material allegations of the [pleading] as true and construed in the light most favorable to the nonmoving party." *Id*. (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235-37 (1974)). "A factual attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction." *Id*. In considering whether jurisdiction has been proved as a matter of fact, "a trial court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). "Moreover, on the question of subject matter jurisdiction the court is not limited to jurisdictional

allegations of the complaint but may properly consider whatever evidence is submitted for the limited purpose of ascertaining whether subject matter jurisdiction exists." *Pryor Oil Co., Inc. v. United States*, 299 F. Supp. 2d 804, 807–08 (E.D. Tenn. 2003) (citing *Rogers*, 798 F.2d at 915-16 (other citations omitted)).

## III.   DISCUSSION

### A. Abandoned Claims

As an initial matter, although the parties briefed the issue of the application of the discretionary function exception to each of the claims raised in the complaint, at a hearing on this matter, Plaintiffs limited their arguments to the failure to warn claim.  Specifically, Plaintiffs stated "make no mistake, we're not challenging how they fought the fire.  We are challenging the warning decision, not how they fought the fire.  They have the right to decide to let it burn.  They have the right to decide to put it out."  [*Reed*, doc. 40 at 15].  Defendant responded that this statement carved out 90 percent of the case.  [*Id*. at 35].  The Court then specifically asked counsel for Plaintiffs to respond to this assertion, that the only claim left in this case is the failure to warn claim.  [*Id*. at 41].  Counsel for Plaintiffs stated unequivocally, "I agree."  The Court again asked whether the failure to warn was the only issue that it needed to address, and counsel responded:

> I think you could find under the first part of the Gaubert test that the safety policy that we set out was mandatory.  I think you could find that, because the language, it says, it will be done.  Now, with that said, I will admit that 90 percent of the cases are not won by the plaintiff on the first part of the Gaubert test.  So – but the real – the real crux of this case is the failure to warn case.

[*Id*.].

In light of counsel's statements, the Court must conclude that Plaintiffs have abandoned their claims of negligence that are not premised on the failure to warn. In their complaint, Plaintiffs faulted the NPS for the following acts of negligence: (1) failing to monitor the wildfire overnight; (2) failing to comply with command structure requirements, by allowing Fire Management Officer Greg Salansky to serve in multiple overlapping roles; (3) failing to utilize a "Step-Up Plan" to determine when the fire danger had increased; (4) failing to perform a required complexity analysis of the fire danger; (5) negligently implementing a 410-acre containment box; (6) failing to adopt contingency plans in case the fire escaped the containment box; (7) disregarding fire-behavior modeling and weather forecast; (8) failing to utilize available air operations to suppress the fire; (9) failing to implement a universal communications system to permit inter-agency communications; (10) failing to use the Wildland Fire Decision Support System; and (11) failing to provide timely and accurate notice and warning to park neighbors, local government officials, and others about the status and imminent danger of the fire. [Doc. 1 at 121-154]. The vast majority of these claims directly attack how the NPS decided to fight the fire—including the decision to "let it burn"—which Plaintiffs now state is not at issue. Moreover, the "safety policy" referenced by Plaintiffs' counsel, when asked whether failure to warn was the only remaining issue in this case, appears to be a reference to part of counsel's argument relating to the directives that Plaintiffs assert mandate that the NPS warn of wildfire danger. Accordingly, based on counsel's statements at the hearing on this matter, the Court concludes that Plaintiffs have abandoned all claims of negligence except their allegation that the NPS negligently failed to warn of the danger posed by the Chimney

6

Tops 2 fire.  In light of this, Defendant's motion to dismiss [doc. 10] will be denied as moot as to Plaintiffs' abandoned claims.

**B. Failure to Warn**

In the Sixth Circuit, a plaintiff can invoke jurisdiction under the FTCA "only if the complaint is facially outside the exceptions [set forth in the FTCA]." *Carlyle v. Dept. of the Army*, 674 F.2d 554, 556 (6th Cir. 1982).  The burden is on Plaintiff to plead sufficiently to demonstrate that the discretionary function exception does not apply.  *Hatcher v. United States*, 855 F. Supp. 2d 728, 731-32 (E.D. Tenn. 2012).

It is well established that the United States, as a sovereign, may not be sued without its specific consent.  *United States v. Sherwood*, 312 U.S. 584, 586 (1941); *Lundstrum v. Lyng*, 954 F.2d 1142, 1145 (6th Cir. 1991); *Garrett v. United States*, 640 F.2d 24, 26 (6th Cir. 1981).  Plaintiffs allege jurisdiction over the United States pursuant to the FTCA.  The FTCA provides a limited waiver of sovereign immunity, that is, a waiver that only applies to certain tort claims for:

> injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). This limited waiver of the government's sovereign immunity is further narrowed by certain enumerated exceptions. *See* 28 U.S.C. 2680. Among these is the discretionary function exception, which excludes from the waiver of sovereign immunity the following:

> [a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). "The exception covers only acts that are discretionary in nature, acts that 'involv[e] an element or judgment or choice.'" *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). The purpose of this exception is "to prevent judicial 'second-guessing' of legislative and administrative decisions." *Myers v. United States*, 17 F.3d 890, 894 (6th Cir. 1994) (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984)). The existence of negligence is irrelevant when determining whether the discretionary function exception applies. *Rosebush v. United States*, 119 F.3d 438, 442 (6th Cir. 1997). If the discretionary function exception applies, and there is no other waiver of the government's sovereign immunity, then the court lacks subject matter jurisdiction over Plaintiffs' FTCA claims. *Sharp ex rel. Estate of Sharp v. United States*, 401 F.3d 440, 443 (6th Cir. 2005).

The Supreme Court has established a two-prong test for evaluating whether the discretionary function exception to the waiver of sovereign immunity in the FTCA applies. *See Gaubert*, 499 U.S. at 328-32. First, the Court must determine "whether the challenged actions were discretionary, or whether they were instead controlled by mandatory statutes or regulations." *Id*. at 328. Second, the Court must determine whether the "actions in question involved the kind of policy judgment that the discretionary function exception was designed to shield." *Id*. at 332. There is a strong presumption that the second part of

the *Gaubert* test is satisfied if a court concludes, in the first step, that the agency was exercising discretion. *A.O. Smith Corp. v. United States*, 774 F.3d 359, 365 (6th Cir. 2014). The crucial first step in the discretionary function analysis is to determine precisely what conduct is at issue. *Rosebush*, 119 F.3d at 441.

In determining whether the NPS's failure to warn of the fire danger falls within the discretionary function exception, the critical first step is to determine precisely the conduct at issue. Plaintiffs define the conduct at issue as the NPS "neglecting to provide timely and accurate notice and warning to Park neighbors, local government officials, local fire departments, local residents, and visitors about the status of and imminent danger presented by the Chimney Tops 2 Fire[.]" [Doc. 1 at 139]. Defendant does not provide any alternate definition of the conduct at issue. [*See* doc. 23-1]. Accordingly, for purposes of the *Gaubert* analysis, the Court will accept Plaintiffs' statement of the conduct at issue.

Under the first prong of the *Gaubert* test, the relevant inquiry is whether the controlling statutes, regulations, and administrative policies mandate that the governmental entity conduct a certain activity in a *specific* manner. *Rosebush*, 119 F.3d at 442. In such an event, "the employee has no rightful option but to adhere to the directive." *Bultema v. United States*, 359 F.3d 379, 384 (6th Cir. 2004) (quoting *Berkovitz*, 486 U.S. at 536). If the regulation does not mandate the specific manner that the governmental entity must conduct certain activity, then a decision as to the precise manner in which to conduct the activity falls within the discretionary function exception. *Rosebush*, 119 F.3d at 442. However, the Sixth Circuit has held that, while regulations may fail to specify how and when they are to be implemented, they may nonetheless be non-discretionary as to *whether*

they are to be implemented.  *A.O. Smith*, 774 F.3d at 361, 367.  The Sixth Circuit has also

held that decisions about warning of potential dangers do not categorically satisfy the

discretionary function exception, and instead, Courts must look at the specific facts in each

case and apply the *Gaubert* test to determine whether a decision to warn falls within the

exception.  *Id.* at 369.

In their complaint, Plaintiffs cite several sections of the Fire Management Plan

("FMP") and Director's Order #18 ("DO 18"), which they argue constitute mandatory

directives regarding their failure to warn claim.  [Doc. 1 at 145-47].  Specifically, Plaintiffs

cite Section 3.3.2 of the FMP, which states that:

> Park neighbors, Park visitors and local residents will be notified of all
> planned and unplanned fire management activities that have the potential to
> impact them.

[Doc. 1 at 146; FMP § 3.3.2 at p. 28].  Plaintiffs also cite to Section 4.4.2 of the FMP,

which requires the Park Service to "protect values at risk and to ensure the safety of park

staff and visitors as well as the neighboring public."  [Doc. 1 at 146; FMP § 4.4.2 at p. 54].

That same section of the FMP continues on to list actions that the Park Service should take

with regard to "Park neighbors," including:

- Post current fire information on websites as available
- Inform park neighbors of wildland fires, and
- Suppress those fires or parts there of [sic] that threaten to burn off of park
  property or that adversely impact public health and safety.

[Doc. 1 at 146; FMP § 4.4.2 at p. 55].

Plaintiffs also cite to a section in both the FMP and DO 18, which states

"[f]irefighter and public safety is the first priority in all fire management activities."  [Doc.

1 at 147; FMP § 3.3.2 at p. 28; DO 18 ¶ 6.1]. Plaintiff's further cite to paragraph 5.1 of

DO 18, which states that "[f]irefighter and public safety is the first priority. All Fire

Management Plans and activities must reflect this commitment." [Doc. 1 at 147; DO 18

¶ 5.1]. Finally, Plaintiffs cite to more language from DO 18, paragraph 5.1, which states:

> the protection of human life is the single, overriding suppression priority.
> Setting priorities to protect human communities and community
> infrastructure, other property and improvements, and natural and cultural
> resources will be done based on human health and safety, the values to be
> protected, and the costs of protection.

[Doc. 1 at 147; DO 18 ¶ 5.1].

In their motion, as to the first prong of *Gaubert*, Defendant argues that neither the

FMP nor DO 18 are mandatory, and, even if they were mandatory, the cited provisions are

not specific enough to defeat the discretionary function exception. [Doc. 11 at 22-23,

40-42]. First, Defendant contends that DO 18 is not mandatory because the introduction

states: "This Director's Order states the basic principles and strategic guidelines governing

the management of wildland fire by the National Park Service." [*Id*. at 22 (citing *Reed*,

doc. 2-1 at 1]. Defendant asserts that principles and guidelines are not mandatory

directives. [*Id*.]. Further, Defendant notes that DO 18 states that it

> is intended to improve the internal management of the NPS and is not
> intended to, and does not create any right or benefit, substantive or
> procedural, enforceable by law, or equity, by a party against the United
> States, its departments, agencies, instrumentalities or entities, its officers or
> employees, or any other person.

[*Id*. at 23 (citing *Reed*, doc. 2-1 at 3)]. As to the FMP, Defendant contends that the

introduction to this document makes plain that it is intended to express goals and provide

guidance.  [*Id*. at 24].  Defendant points to Section 4 of the FMP, which is labeled "Wildland Fire Operational Guidance," and states:

> Beginning with the initial action to any wildfire, decisions will reflect the goal of using available firefighting resources to manage the fire in the safest, most effective, and most efficient means available while meeting identified fire management unit goals and objectives.

[*Id*. at 24-25].  Defendant thus contends that neither of these sources supplies mandatory directives, and thus, fail to remove Plaintiffs' claims from the scope of the discretionary function exception.  [*Id*. at 26].

Defendant then argues that, even if the FMP is mandatory and binding on the NPS, § 3.3.2 affords discretion to Park officials to determine whether and when fire management activities have the potential to affect the listed parties.  [*Id*. at 40].  Thus, Defendant contends that this section is not sufficiently specific to defeat the discretionary function exception.  [*Id*. at 40-41].  Defendant also states that § 4.4 of the FMP, containing the section on mitigation, refers to the Park's fire prevention program "objectives," and thus is not a mandatory directive, but is also insufficiently specific since it does not prescribe when or how the NPS must notify.  [*Id*. at 41].

Plaintiffs respond that the policies they cited restrict discretion and mandate certain conduct.  [Doc. 14 at 31].  Plaintiffs contend that the government bears the burden of proving that a statement is a guideline, rather than a mandate, and the government has not met that burden here.  [*Id*. at 32].  Plaintiffs further note that the NPS's own experts relied on these documents as the source of wildland fire policy.  [*Id*.].  Plaintiffs further contend that the policy provisions are sufficiently specific, noting that, FMP § 3.3.2, for example,

specifically requires fire managers to inform Park neighbors of all planned and unplanned fire management activities. [*Id*. at 33, 40-41].

Defendant replies that, because both DO 18 and the FMP state that they provide guidance, the management of a given wildfire is left to the discretion of Park Service professionals. [Doc. 15 at 4]. Defendant contends that Plaintiffs have not rebutted its showing that the FMP cannot be a source of any mandatory directive, because it was intended to express goals and provide guidance, rather than prescribe mandatory directives. [*Id*. at 13-14]. Defendant further argues that Plaintiffs have not disputed that FMP § 3.3.2 affords discretion to determine whether and when fire management activities have the potential to affect Park neighbors or when or how Park officials must alert them. [*Id*. at 14].

The Court agrees with Defendant that DO 18 does not contain any mandatory directives regarding Plaintiffs' failure to warn claim. DO 18 states that it sets forth "the basic principles and strategic guidelines governing the management of wildland fire by the [NPS]." [*Reed*, doc. 2-1 at 1]. DO 18 further states that its purpose is to, *inter alia*, "[e]stablish a framework by which the NPS will institutionalize and implement principle, policies, organizational and operational relationships, and changes in law and reporting requirements." [*Id*. § 1.2(B), p. 2]. Although DO 18 repeatedly emphasizes that "[f]irefighter and public safety is the first priority in all fire management activities[,]" [*see id*. at § 5.1(A), p. 4; § 6.1(A), p. 7], DO 18 also indicates that "[t]he circumstances under which a fire occurs, and the likely consequences on firefighter and public safety and

welfare, natural and cultural resources, and values to be protected, dictate the appropriate response to the fire." [*Id*. at § 5.1(C), p. 5].

It is clear to the Court that, in the full context, the language cited by Plaintiffs from DO 18 does not contain any mandatory directive. The language of DO 18 clearly indicates that various factors are to be considered in determining the appropriate response to wildfire danger. This requirement, that the NPS consider multiple factors in deciding how to proceed, is precisely the type of discretionary decision that the discretionary function exception was designed to protect. While DO 18 repeatedly emphasizes that the protection of human life is the overriding concern in any firefighting activity, this alone is insufficient to show any mandatory directive with regard to the NPS's decision to warn of the imminent danger of the Chimney Tops 2 fire. The Court agrees with many of the Circuit courts around the country that have held that "guidelines" generally cannot be mandatory directives. *See Riley v. United States*, 486 F.3d 1030, 1033 (8th Cir. 2007) (provisions of publication were "guidelines and not mandatory" because the publication stated that it was intended as "guidance" and a "reference manual"); *K.W. Thompson Tool Co. v. United States*, 836 F.2d 721, 729 (1st Cir. 1988) (agency manual was "intended to act as general guidelines, not specific, inflexible and mandatory rules"). By its definition, a guideline is "an indication or outline of future policy or conduct[.]" Merriam-Webster Unabridged Dictionary, "Guideline," http://unabridged.merriam-webster.com (November 20, 2019). Thus, by its very definition, a guideline cannot be a mandatory directive specifying exactly how a government agency should proceed. Accordingly, if the Plaintiffs claim of

jurisdiction rested solely on DO 18, the Court would conclude that the discretionary function exception applied.

However, the Court is not convinced that the FMP, on which Plaintiffs also rely, merely contains guidelines for the NPS, at least as it relates to the failure to warn claim. In its introduction, the FMP states that it "provides long-term direction for achieving park goals related to human safety and ecosystem management." [*Reed*, doc. 1-7 at 5]. The introduction further states that the FMP "outlines those actions that *will be taken* by Great Smoky Mountains National Park in meeting the fire management goals for the park including [requirements contained in DO 18]." [*Id*. (emphasis added)]. The FMP sets forth several goals, including to "[p]rotect human life," and states that the "goals described above will be achieved through" the programs discussed in later chapters of the FMP. [*Id*. at 6]. The Court finds that this language is insufficient to label the entirety of the FMP as mere "guidelines," that cannot provide any mandatory directives. The Court has carefully reviewed the entirety of both DO 18 and the FMP, and, although the Court concludes that DO 18 merely contains guidelines for the NPS, the Court concludes that the FMP appears to set forth more specific requirements, to implement the goals and guidelines set forth in DO 18. Accordingly, the Court cannot conclude, based on the language in the introduction to the FMP, that everything contained therein is merely a guideline.

Section 3.3.2(C) of the FMP states that "[f]irefighter and public safety is the first priority in all fire management activities[,]" and specifies that "Park neighbors, Park visitors and local residents *will be* notified of *all* planned and unplanned fire management activities that have the potential to impact them." [*Id*. at 28 (emphasis added)].

Additionally, Section 4.4.2 of the FMP addresses the issue of public safety, and subsection (F) "outline[s] mitigation actions *required* to protect values at risk and to ensure the safety of park staff and visitors as well as the neighboring public." [*Id*. at 54-55 (emphasis added)]. Table 13, titled "Mitigations for Public Safety Issues," then addresses various actions to be taken to protect various groups and resources. [*Id*. at 55]. Specifically, Table 13 sets forth as follows:

**Table 13**. *Mitigations for Public Safety Issues*

| Public Safety Issues | Mitigation |
|---|---|
| **Transportation Corridors** | • Smoke Screening Tools<br>• Post Warning Signs/Notify visitors at park entrances<br>• Implement appropriate level of traffic control or request assistance<br>• Monitor smoke dispersal<br>• Mop-up smoldering fuels |
| **Urban Interface and Park Infrastructure** | • Prescribed burns to reduce hazard fuel accumulation<br>• Notify and update residents and employees of proposed and/or ongoing operations<br>• Relocate at-risk residents or park staff<br>• Respond to fires in the Mutual Response Zone<br>• Pre-attack plans<br>• Monitor urban expansion to identify new communities at risk<br>• Suppress those fires or portions there of [sic] that threaten infrastructure |
| **Visitor Use** | • Post current fire information on websites as available<br>• Time prescribed burns to minimize impacts to visitors<br>• Provide and post fire information at backcountry permit stations, at visitor access points, and visitor centers<br>• Close areas to the public during fire operations<br>• Contact backcountry permit stations and ascertain if permits are issued for a fire area<br>• Visually survey fires to ensure that no visitors are present<br>• Suppress fires that threaten visitor use areas |
| **Park Operations** | • Post current fire information on websites as available<br>• Send email notifications to park staff regarding current fire information<br>• Close areas to administrative use during fire operations and/or limit access<br>• Time prescribed burns to minimize impacts to park operations<br>• Temporarily relocate at-risk park staff |

| Park Neighbors | • Use Smoke Screening Tools<br>• _Post current fire information on websites as available_<br>• _Inform park neighbors of wildland fires_<br>• _Use information officer and/or park public affairs to disseminate information_<br>• Suppress those fires or parts there of that threaten to burn off of park property or that adversely impact public health and safety |
| --- | --- |

[*Id.* (emphasis added)].

The Court acknowledges that language requiring an agency to "protect" or "safekeep" is too general to constitute a mandatory directive for purposes of the discretionary function exception. *A.O. Smith*, 774 F.3d at 365 (citing *Montez ex rel. Estate of Hearlson v. United States*, 359 F.3d 392 (6th Cir. 2004)). Accordingly, any statements in the FMP indicating that the protection of life and public safety must be the primary goals in any fire management activity are insufficiently specific to constitute mandatory directives for purpose of the discretionary function exception.

Nonetheless, the Court still must determine whether the following sections of the FMP constitute mandatory directives:

(1) Section 3.3.2's statement that "Park neighbors, Park visitors and local residents *will be* notified of *all* planned and unplanned fire management activities that have the potential to impact them[,]" and

(2) Table 13's statements regarding mitigating efforts for protecting Park neighbors.

The Court concludes that each of these portions of the FMP constitute mandatory directives for purposes of the discretionary function exception.

In so concluding, the Court finds it appropriate to compare the language in the FMP to language that the Sixth Circuit has concluded does not constitute a mandatory directive, particularly in the failure to warn context. In *Myers*, the regulation at issue stated, *inter alia*, "if, during mandatory quarterly inspections, a safety violation is discovered, then inspectors must issue a citation and, if the violation poses an 'imminent danger,' a withdrawal order[.]" *Myers*, 17 F.3d at 895. The Court concluded that the "if/then" logical structure of the duties contained in the regulation presents the official with a choice as to whether the condition precedent exists, which was sufficient to satisfy the first prong of *Gaubert*. *Id*. at 895-96. However, unlike the language in *Myers*, neither the language in § 3.3.2 nor Table 13 contains the "if/then" language. Section 3.3.2 specifically states that Park neighbors will be notified of all planned and unplanned fire management activities that have the potential to impact them. This section specifies who is to be notified (Park neighbors), and what activities they are to be notified of (planned and unplanned fire management activities that may affect them). Moreover, none of the activities listed in Table 13 relating to warning park neighbors (i.e., posting current fire information on websites, informing Park neighbors of wildland fires, and using information officers and/or park public affairs to disseminate information) are phrased in an "if/then" manner. Rather, the FMP states that these activities are *required*. Further, the actions listed in Table 13 are specific as to when and how warnings should occur, namely, Park neighbors should be informed in the event of a wildland fire, using various means, including the internet and information officers.

In *A.O. Smith*, in addressing whether a mandatory directive required the Army Corps of Engineers to warn of potential flood danger, based on its management of a dam and reservoir, Plaintiffs relied on regulations that "recommend[ed]" a "detailed communications plan" and "recommend[ed]" procedures related to the "[d]issemination of warnings by the Corps directly to the general public in the immediate vicinity of the dam and reservoir." *A.O. Smith*, 774 F.3d at 370. Regulations also stated that "release to interested parties of factual information . . . is *permissible*[,]" and "District offices are *encouraged* to provide assistance to communities and individuals regarding the impact of forecasted floods." *Id.* (emphasis added). The Sixth Circuit held that, with the language regarding releases of information being "permissible" and disclosures being "encouraged," even if the regulation contained information on how to promulgate warnings, the regulation only encouraged or recommended their promulgation, and thus, the first prong of *Gaubert* was satisfied. *Id.* Here, none of the directives at issue contain any language about recommended, encouraged, or permissible action. To the contrary, the relevant portions of § 3.3.2 and Table 13 are all phrased as requirements to act and notify Park neighbors of wildfire dangers.

In *Rosebush*, Plaintiffs sued the United States Forest Service for failure to warn of the dangers of a fire pit, after their child was severely burned. *Rosebush*, 119 F.3d at 440. Plaintiffs relied on, *inter alia*, language from the United States Forest Service Manual regarding public safety, which stated:

> *To the extent practicable*, eliminate safety hazards from recreation sites. To accomplish this, inspect each public recreation site annually before the beginning of the managed-use season. Maintain a record of the inspections

and corrective actions taken with a copy of the operation and maintenance plan.

Immediately correct high-priority hazards that develop or are identified during the season or close the site.

*Id*. at 441 (emphasis added). The Sixth Circuit concluded that the determination of what is "practicable" requires the exercise of discretion, and thus, the first prong of *Gaubert* was satisfied. *Id*. at 442. In comparison, here, there is a specific regulation about the duty to notify, unlike the language discussed in *Rosebush*. Moreover, the language in the FMP does not reference what is "practicable." Rather, as discussed above, the directives in § 3.3.2 and Table 13 are phrased as requirements to notify.

After thorough examination, the Court concludes that, because § 3.3.2 and Table 13 of the FMP require the NPS to take specific actions, these sections contain mandatory directives relating to Plaintiffs' failure to warn claim, and the first prong of the *Gaubert* test has not been satisfied. Because the Court concludes that the first prong of *Gaubert* has not been established, the Court need not address the second prong. Accordingly, because Plaintiffs have cited mandatory directives to support jurisdiction over their claims based on the failure to warn about the Chimney Tops 2 fire, the Court finds that it has jurisdiction over this matter, and Defendant's motion to dismiss for lack of jurisdiction [*Vance*, doc. 10; *Barnes*, doc. 8] will be denied.

# IV.     CONCLUSION

Accordingly, for the reasons stated herein, Defendant's motion to dismiss for lack of jurisdiction [*Vance*, doc. 10; *Barnes*, doc. 8] will be denied.  An order consistent with this opinion will be entered.


_____s/ Thomas W. Phillips_____
SENIOR UNITED STATES DISTRICT JUDGE